IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EARNEST HENDERSON, et al,

    Plaintiffs,

    v

CITY AND COUNTY OF SAN FRANCISCO, et al,

    Defendants.

No  C-05-234 VRW

ORDER

    Plaintiffs, who are present and former inmates of the San Francisco County Jail ("SF Jail"), claim that the individual sheriff's deputy defendants violated plaintiffs' due process rights by using excessive force against plaintiffs and were deliberately indifferent to plaintiffs' serious medical needs during five separate incidents between December 2003 and December 2004. Plaintiffs also allege that the City and County of San Francisco ("the City"), the San Francisco Sheriff's Department ("SFSD"), the San Francisco Department of Public Health Services and Sheriff Michael Hennessey established various customs and practices that enabled the deputy defendants to violate plaintiffs' constitutional rights.  Doc #1.

On February 3, 2006, plaintiffs moved to compel the following discovery:  (1) all complaints and grievances alleging excessive force and deliberate indifference to serious medical needs filed by inmates in the SF Jail from December 13, 1998, until the present, against defendant Deputies Glenn Young, Miguel Prado and Larry Napata; (2) the identical discovery for grievances against Deputies A Gonzalez, George Antoniotti and William James during this same time period and (3) all complaints and grievances filed per year since December 13, 1998, alleging excessive force or sexual assault by deputies in the SF Jail, the number of grievances that were investigated by internal affairs and what discipline, if any, was imposed based on those investigations.  Doc #31 at 4.

In opposition, defendants argued that the requested discovery was unnecessary because plaintiffs' Monell claims were "redundant" with their due process claims against the individual sheriff deputies.  Doc #32 at 1.  Defendants also argued that the proposed discovery should be limited under FRCP 26(b)(2) because it would impose an excessive burden on defendants.  Id.  Apparently defendants organize grievances by jail facility and month, not by the categories that plaintiffs have identified or by the names of any involved deputies.  Dempsey Decl (Doc #33), ¶ 10.  Defendants asserted that finding the relevant grievances would require defendants to spend at least 400 employee hours and $23,452.50 to review 12,000 handwritten inmate grievances.  Id, ¶ 18.  And defendants claimed it would take 168 employee hours and $11,289.60 to distinguish between internal affairs investigations that began with inmate grievances and investigations that started for some other reason and during which time a grievance was filed.  Id, ¶¶

2

20, 21.

To balance plaintiffs' asserted need for the discovery and defendants' substantial burden in providing the discovery, the court proposed in a March 10, 2006, order that "a random sample of 400 grievances" be conducted to yield "a confidence level of 95% for a confidence interval of 5 and a population of 12,000." Doc #40. The court invited the parties to file short briefs addressing this proposal. Id.

Neither plaintiffs nor defendants are satisfied by the proposed statistical sampling. See Doc ##41, 42. Plaintiffs contend that a random sample would not permit them to determine if grievances filled out by inmates and handed to deputies were actually filed. Doc #41 at 1. Plaintiffs intend to solicit declarations from individual inmates; therefore, only a complete sample would confirm whether the individual claims were destroyed or simply denied. Id. Defendants oppose the court's proposal because they predict that so few of the grievances involve allegations of excessive forces, approximately 0.6%, that the 5% margin of error would render the results meaningless. Doc #42.

In their letter, plaintiffs offer an alternative proposal: that defendants limit the scope of the disclosure to one of the six jails (county jail #2), narrow the category of grievances to one of the twelve ("complaint against staff") and restrict the time period to one of the three years requested (May 1, 2003 until May 1, 2004). Under this proposal, plaintiffs would be responsible for deciphering whether the written requests complained of excessive force.

Defendants argue that the compromise "fundamentally

3

*expands* and transforms the scope of Plaintiffs' motion," Doc #42 at 2, because plaintiffs' motion "expressly disclaimed any intent to obtain identifying information regarding grievances," id, unlike the proposed compromise.  As such, defendants contend that these grievances should not be discoverable because they violate the inmates' privacy.

But defendants ignore the court's protective order, which addresses this very issue:

> Plaintiffs have sought discovery of certain personnel records related to the individual defendants in this action.  Defendants will produce certain of those records to Plaintiffs' Counsel pursuant to this Protective Order.

Protective Order (Doc #26), ¶ 1.  To the extent the proposed discovery relates to the individual defendants, it is expressly contemplated by the protective order.  Moreover, defendants concede that they want this "strictly drawn protective order" to "apply to any documents or information produced here."  Dempsey Decl, ¶ 27. Because the whole point of the protective order was to enable defendants to produce materials of the type requested here, the court sees no reason why plaintiffs' proposed compromise is problematic to defendants.

The court also observes that if plaintiffs or plaintiffs' counsel are responsible for the unauthorized disclosure of any of the confidential information in the grievances, they "may be subject to sanctions and possible contempt."  Protective Order, ¶ 9.  This palpable threat of sanctions presumably should prevent the release of any protected information.

Defendants also assert that retrieving the grievances from the storage boxes would take "an inordinate amount of time."

**4**

Doc #42 at 3. But in light of plaintiffs' concessions, this claim rings hollow. Under the compromise, defendants would have to sift through at most 1300 grievances and pull out the approximately 12 percent that are labeled "complaints against staff." See Doc #42. It is unclear to the court how this task could possibly consume "hundreds of hours," id, even by government standards.

In any event, it would be anomalous to permit defendants to avoid discovery because they have chosen to store grievances in a disorganized way. And it makes little sense to prohibit plaintiffs from garnering information from the grievances given that they are stored presumably so that they may be reviewed if necessary.

Accordingly, defendants are hereby ORDERED to provide plaintiffs with all grievances classified as "complaints against staff" that were filed in San Francisco county jail #2 between May 1, 2003 and May 1, 2004. The provisions of the stipulated protective order (Doc #26) govern the disclosure of these documents.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge