# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARNEST HENDERSON, JANEL GOTTA, AARON RAULS, MICHAEL PEREZ, ARTURO PLEITEZ,<br><br>        Plaintiffs<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF'S DEPARTMENT, SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH SERVICES, SHERIFF MICHAEL HENNESSEY, DEPUTY GLENN YOUNG, DEPUTY MIGUEL PRADO, DEPUTY LARRY NAPATA, AND DOES 1-11,<br><br>        Defendants. | Case No.C05-0234 VRW/WAF<br><br>ORDER ISSUING JURY INSTRUCTION ON SUBSTANTIVE LAW APPLICABLE TO THE CLAIM (EARNEST HENDERSON TRIAL)<br><br>Date Action Filed: Jan. 14, 2005<br>Pretrial Conference: Sept. 14, 2007<br>Trial Judge: William A. Fletcher<br>Trial Date: Sept. 24, 2007 |

The matter of the substantive law applicable to plaintiff's claim came before the Court at the pretrial conference for the Henderson trial on September 14, 2007.  After reviewing all of the papers and hearing oral argument, the Court provides its reasoning for the jury instructions relating to the applicable constitutional claim.

At the time of the incident allegedly involving the use of excessive force, plaintiff

1

Earnest Henderson had been arraigned and was a pretrial detainee at the San Francisco County Jail.  The Supreme Court has recognized that the protections of the Fourth Amendment apply to excessive force claims "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen."  *Graham v. Connor*, 490 U.S. 396, 395 (1989).  The Supreme Court "ha[s] not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins."  *Graham*, 490 U.S. at 395 n.10.  The Eighth Amendment's prohibition on cruel and unusual punishment "was designed to protect those convicted of crimes, and consequently the Clause applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."  *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (internal quotation marks and citation omitted) (quoting *Ingraham v. Wright*, 430 U.S. 651, 664, 671 n.40 (1977)).  Therefore, remaining unresolved is the applicable law protecting individuals from excessive force in the period along the "custodial continuum" after lawful arrest and before conviction.  *See Pierce v. Multnomah County*, 76 F.3d 1032, 1042 (9th Cir. 1996).

   This circuit has rejected the contention that an Eighth Amendment standard automatically attaches as soon as a person enters a jail facility.  *Id.*  It is the law of this circuit that the Fourth Amendment continues to apply after arrest and until arraignment.  *Id.* at 1043 ("We hold, therefore, that the Fourth Amendment sets the applicable constitutional limitations on the

2

treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest.").  Yet under the law of this circuit, between arraignment and conviction there is no "specific constitutional right" under either "the Fourth Amendment [ ]or the Eighth, the two most textually obvious sources of constitutional protection against physically abusive governmental conduct."  *See Graham*, 490 U.S. at 392, 394.  Where no "explicit textual source of constitutional protection" applies, as in the present case, a plaintiff may turn to "the more generalized notion of substantive due process."  *See id.* at 395; *id.* at 395 n.10 ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."); *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) ("The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees."); *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982) ("[T]he right to personal security constitutes a 'historic liberty interest' protected substantively by the Due Process Clause . . . [a]nd that right is not extinguished by lawful confinement, even for penal purposes." (citation omitted)).

In articulating the contours of the due process protections against excessive force for post-arraignment pretrial detainees, this Court considers that after a court has found an individual to be legally in custody based on probable cause for arrest, the seizure which commenced incident to arrest has terminated.  Moreover, once lawful custody has begun, the government's potential interest in using force takes on greater salience.  *Wolfish*, 441 U.S. at 537

3

("Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention.").  While a pretrial detainee may not be punished for any alleged crime prior to conviction for that crime, a pretrial detainee may be subject to the use of force for purposes other than punishment for the crime charged, *see Wolfish*, 441 U.S. at 537 ("This Court has recognized a distinction between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may."), so long as that force is not "unnecessary and wanton," *cf. Hope v. Pelzer*, 536 U.S. 730, 737 (2002).  The parameters of "unnecessary and wanton" vary "according to the nature of the alleged constitutional violation."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

To the extent that the Supreme Court has said that a pretrial detainee may not be punished, the term punishment is a term of art.  *Compare Ingraham*, 430 U.S. at 671 n.40 ("[T]he State does not acquire the power to punish *with which the Eighth Amendment is concerned* until after it has secured a formal adjudication of guilt in accordance with due process of law." (emphasis added)), *and id.* at 669 n.37 ("Some punishments, though not labeled 'criminal' by the State, may be sufficiently analogous to criminal punishments in the circumstances in which they are administered to justify application of the Eighth Amendment."), *with Graham*, 490 U.S. at 395 n.10 ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force *that amounts to* punishment." (emphasis added)).  Punishment in the

4

constitutional sense refers to the imposition of penalties for an alleged crime.  In the context of detention prior to trial, a custodial authority may impose restrictions or even use force on a detainee in ways that are used in the detention facility to maintain safety and order  – "legitimate governmental objectives" justifying restraints on pretrial detainees.  *See Wolfish*, 441 U.S. at 538 n.19; *id.* at 539 ("[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"); *id.* at 540 ("The government . . . has legitimate interests . . . [that include] maintain[ing] security and order at the institution . . . .").  Such force may be lawful, so long as it is used to maintain safety and order and not to punish – in the Eighth Amendment sense – the detainee for the alleged crime giving rise to the justification for custody.  *Cf. Ingraham*, 430 U.S. at 669 ("Prison brutality . . . is part of the total punishment to which the individual is being subjected for his crime and, as such, is a proper subject for Eighth Amendment scrutiny." (internal quotation marks omitted)).  This Court finds that the same general parameters for the use of force in a post-conviction context apply in the pretrial context, with the additional provisio that force in the pretrial context may not be used as a form of punishment for the alleged crime.  *Cf. Whitley*, 475 U.S. at 320 ("The general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should also be applied with due regard for the differences in the kind of conduct against which an Eighth Amendment objection is lodged.").  To the extent that the use of force is acceptable, it must further the jail's

interest in order and security or its interest in the safety of inmates, custodians, or visitors.

In the instant case this Court will use the following jury instruction to describe the applicable substantive law.  The language of our instruction is in bold type, and for purposes of this order, the Court has added supporting citations in ordinary type to demonstrate the basis for the language in the instruction:

> **In order for plaintiff Henderson to prove that one or more of the defendants used excessive force in violation of his constitutional rights, he must prove by a preponderance of the evidence that one or more of the defendants inflicted pain on him unnecessarily and wantonly.** *Hudson*, 503 U.S. at 5 ("What is necessary to establish an 'unnecessary and wanton infliction of pain,' . . . varies according to the nature of the alleged constitutional violation." (quoting *Whitley*, 475 U.S. at 320)); *see Hope*, 536 U.S. at 737 ("[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." (internal quotation marks omitted, alterations in *Hope*)); *Whitley*, 475 U.S. at 319 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement,

6

supplying medical needs, or restoring official control over a tumultuous

cellblock.  The infliction of pain in the course of a prison security measure,

therefore, does not amount to cruel and unusual punishment simply because it

may appear in retrospect that the degree of force authorized or applied for

security purposes was unreasonable, and hence unnecessary in the strict sense.”).

**One definition of unnecessary and wanton infliction of pain is the sadistic**

**and malicious infliction of pain for the very purpose of causing harm.**

*Whitley*, 475 U.S. at 320 (“Where a prison security measure is undertaken to

resolve a disturbance, . . . that indisputably poses significant risks to the safety of

inmates and prison staff, we think the question whether the measure taken

inflicted unnecessary and wanton pain and suffering ultimately turns on ‘whether

force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm.’” (quoting

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))); *Wilson v. Seiter*, 501

U.S. 294, 302 (1991) (“[W]antonness does not have a fixed meaning but must be

determined with ‘due regard for differences in the kind of conduct against which

an Eighth Amendment objection is lodged.’  Where (as in *Whitley*) officials act

in response to a prison disturbance, their actions are necessarily taken ‘in haste,

under pressure,’ and balanced against ‘competing institutional concerns for the

7

safety of prison staff or other inmates.'  In such an emergency situation, we

found that wantonness consisted of acting '"maliciously and sadistically for the

very purpose of causing harm."'" (citations omitted) (quoting *Whitley*, 475 U.S.

at 320-21)).  **Another definition is the infliction of pain totally without**

**penological justification.**  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)

("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally

without penological justification.'" (quoting *Gregg v. Georgia*, 428 U.S. 153,

183 (1976) (joint opinion))); *Hope*, 536 U.S. at 738 (concluding that "the Eighth

Amendment violation [was] obvious" when a prisoner was handcuffed to a

hitching post after the prisoner "had already been subdued, handcuffed, placed in

leg irons, and transported back to the prison" because "[a]ny safety concerns had

long since abated"); *id.* (finding that the use of a hitching post "[d]espite the

clear lack of an emergency situation," which knowingly subject[ed] a prisoner

"to a substantial risk of physical harm, [and] to unnecessary pain," constituted

wanton and unnecessary infliction of pain clearly prohibited by the Eighth

Amendment); *cf. White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990) ("On its

face, the challenged transfer [of the pretrial detainee] is reasonably related to the

legitimate goal of maintaining order in the jail.  Yet, according to the evidence

put forward by White, the transfer may have been punishment for the swear

8

words Sergeant Roper thought White used against him.  Whether Sergeant Roper tried to punish White, or simply transfered [sic] him for legitimate penological purposes, turns on Sergeant Roper's intent.").  **In the context of the instant case, in which the plaintiff is detained after arraignment and pending trial, penological justification means justification based on maintaining order and safe conditions in the jail.** *Wolfish*, 441 U.S. at 540 ("The Government . . . has legitimate interests that stem from its need to manage the facility in which the individual is detained. . . . For example, the Government must be able to take steps to maintain security and order at the institution . . . .").  **In determining whether defendants unnecessarily and wantonly inflicted pain, you may consider (1) the need for the application of force against plaintiff Henderson, (2) the relationship between that need and the amount of force used, (3) the threat defendants reasonably perceived to be posed by plaintiff Henderson, (4) any efforts by the defendants to temper or reduce the degree of force used, and (5) the severity of injury inflicted on plaintiff Henderson.** *See Hudson*, 503 U.S. at 7  (concluding that "the extent of the injury suffered by the inmate is one factor that may suggest" that the use of force was unnecessary and wanton, and adding that "it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force

9

used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response" (internal quotation marks omitted) (quoting *Whitley*, 475 U.S. at 321)); *Whitley*, 475 U.S. at 320-21 (observing that when prison officials use force to resolve a prison riot, to determine whether their force was unnecessary and wanton a court should consider "the need for application of force, the relationship between the need and the amount of force that was used, . . . the extent of injury inflicted, . . . . the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, and any efforts made to temper the severity of a forceful response" (internal quotation marks omitted) (quoting *Johnson*, 481 F.2d at 1033)); *Hudson*, 503 U.S. at 6 ("Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates."); *see also id.* at 7 ("Extending *Whitley*'s application of the 'unnecessary and wanton infliction of pain' standard to all allegations of excessive force works no innovation."); *Graham*, 490 U.S. at 392-99 (concluding that the four-factor test of *Johnson v. Glick* had been inappropriately applied as a "single generic standard" for all excessive force claims, while noting that the Fourth Amendment objective reasonableness test applies in the course of

10

an arrest, investigatory stop, or other seizure, and that the Eighth Amendment "malicious and sadistic" factors apply only after conviction, leaving open the possibility that the four-factor test applies after arrest and prior to conviction, as was the case in *Johnson*).

IT IS SO ORDERED

Dated:   September 21, 2007

By:   William A. Fletcher

The Honorable William A. Fletcher
United States Circuit Judge for the Court of
Appeals of the Ninth Circuit, sitting by
designation